UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **RAHILA TARVERDIYEVA**, | ) |
| | ) |
| Plaintiff, | ) |
| vs. | ) Case No.: 8:21-cv-1717-MSS-SPF |
| | ) |
| **COINBASE GLOBAL, INC. a/k/a** | ) |
| **COINBASE**, | ) |
| | ) |
| Defendant. | ) |
| _____ | / |

# DEFENDANT COINBASE, INC'S MOTION
# TO COMPEL ARBITRATION AND STAY ACTION

1

## I.   INTRODUCTION

Founded in June of 2012, Coinbase, Inc.[1] ("Coinbase") is a digital currency wallet and exchange platform where users can transact with digital currencies like Bitcoin, Ethereum, and Litecoin. Plaintiff Tarverdiyeva was a Coinbase user. Like all Coinbase users, Tarverdiyeva was required to agree to Coinbase's User Agreement ("User Agreement"). User Agreement Section 7.2 provides for mandatory arbitration before the American Arbitration Association ("AAA") for unresolved[2] disputes arising out of the User Agreement or a Coinbase service (the "Arbitration Agreement"). Plaintiff's primary allegation is that Coinbase "accessed [her] account without [her] permission," improperly "increased [her] withdrawal limit," "converted all [her] funds . . . without [her] permission," and "violated several clauses of its own User Agreement." Compl., at 5, 7, ¶¶ 1-3, 15. Plaintiff Rahila Tarverdiyeva's complaint arises from her use of Coinbase's services and Coinbase's alleged breaches of its User Agreement and therefore must be arbitrated under the Arbitration Agreement.

Arbitration agreements such as the one between Plaintiff and Coinbase are valid and enforceable under the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("FAA"). Additionally, courts around the country and in the Eleventh Circuit have consistently found online sign-up flows, like the one used by Coinbase, create binding, enforceable arbitration agreements because they are clear and conspicuous. *See, e.g., Nguyen v.*

---

[1] The Plaintiff's Complaint and Summons in this case name Coinbase, Inc. as the sole defendant. However, the case caption contains a misnomer of "Coinbase Global, Inc. also known as Coinbase." Accordingly, this Motion is brought solely on behalf of Coinbase, Inc. See, Complaint [Dkt. 1] ("Compl.") and Summons [Dkt. 3].
[2] The User Agreement provides for attempted resolution in the first instance through the Coinbase support team. Disputes that are not resolved by the support team are to be finally settled in binding arbitration.

*Barnes & Noble Inc.*, 763 F.3d 1171, 1176 (9th Cir. 2014); *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1231 (S.D. Fla. 2020); *In re Facebook Biometric Info. Privacy Litig.,* 185 F. Supp. 3d 1155, 1165 (N.D. Cal. 2016); *Savetsky v. Pre-Paid Legal Servs., Inc.*, 2015 WL 604767, at *3 (N.D. Cal. Feb. 12, 2015); *Segal v. Amazon.com, Inc.*, 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011).  The Coinbase sign-up-flow requires prospective users to click "I Agree" to the User Agreement to complete registration.

To Coinbase's knowledge, no court has held that this User Agreement to not be enforceable.  In fact, courts have enforced the Coinbase User Agreement at issue here. *See Sultan v. Coinbase, Inc.*, 354 F. Supp. 3d 156, 161 (E.D.N.Y. 2019); *Pierre v. Coinbase, Inc.*, 2021 WL 1538015, at *1 (Sup. Ct., N.Y. Cty. Apr. 14, 2021); *Strozier v. Coinbase, Inc.*, No. 651451/2018 (Sup. Ct., N.Y. Cty. Sept. 5 and 10, 2018).

Finally, there can be no dispute that the Arbitration Agreement covers Plaintiff's claims.  The Supreme Court has made clear that where the parties have entered into an arbitration agreement, a presumption arises that any dispute between them falls within the scope of the arbitration agreement.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  That is especially true where, as here, the Arbitration Agreement is broad and covers "*any* dispute arising under this Agreement."  Declaration of Carter McPherson-Evans ("McPherson-Evans Decl."), ¶¶ 6, 9, Ex. 1 (emphasis added). Plaintiff renders this analysis simple—she cites Coinbase's alleged violations of the User Agreement as the predicate for her claims.

Accordingly, the instant Motion to Compel Arbitration and Stay the Action should be granted, and this dispute submitted to arbitration pursuant to the binding Arbitration Agreement.

## II.   FACTUAL BACKGROUND

Coinbase is a digital currency exchange that provides an online platform for the buying, selling, transferring, and storing of digital currency. McPherson-Evans Decl., ₱ 3. Coinbase provides services to its users pursuant to the Coinbase User Agreement. *Id.*, ₱ 4. Persons seeking to utilize Coinbase's platform must first create a Coinbase account by providing personal identifying information and accepting the terms of the User Agreement. *Id.*, ₱₱ 4, 12. Plaintiff is a Florida resident who created and maintained a Coinbase account since December 17, 2017. *Id.*, ₱ 14, Ex. 2.

On July 15, 2021, Plaintiff filed her Complaint. The crux of this dispute are Plaintiff's allegations that Coinbase "accessed [her] account without [her] permission," improperly "increased [her] withdrawal limit," "converted all [her] funds . . . without [her] permission," and "violated several clauses of its own User Agreement." Compl., at 5, 7, ₱₱ 1-3, 15. Additionally, on July 26, 2021, Plaintiff mailed a letter to the Court which was docketed as a "Supplement" to her Complaint which reiterates her allegation that "Coinbase has violated several clauses of its own User Agreement" and identified twelve additional sections from the User Agreement from which her alleged claims stem. *See* Supplement to Complaint [Dkt. 4].

### A. Coinbase Members Agree to the Arbitration Agreement When Registering for an Account.

There is no charge to create a Coinbase account. McPherson-Evans Decl., ¶ 4. Acceptance of the terms and conditions of the User Agreement grants prospective users a license to access and use the Coinbase Site and related content. *Id.* At the time of Plaintiff's registration, prospective users could create Coinbase accounts both on its website and via the Coinbase mobile application. *Id.*, ¶ 11. The account creation page on both the website and mobile application had fields for a prospective user to enter his or her first and last name, email address, and newly created password. *Id.*, ¶ 12. Then, upon receiving that information, each prospective user was presented with the then-current User Agreement and prompted to click either "I Agree" or "Cancel." *Id.*

Prospective users at the time of Plaintiff's registration had to complete each field—including clicking "I Agree" to the User Agreement to proceed with registration. *Id.*, ¶ 13. The website and mobile application did not permit anyone to create an account without affirmatively agreeing to the User Agreement. *Id.* Should someone try to create an account without clicking "I Agree," the account would not be created. *Id.*

Plaintiff created her account on December 17, 2017, through the Coinbase website. *Id.*, ¶ 14, Ex. 2. Prospective users at the time of Plaintiff's registration could not create accounts without clicking "I Agree" to the User Agreement. *Id.*, ¶ 13. Thus, Plaintiff necessarily accepted the User Agreement prior to creating her account.

### B.     Coinbase's User Agreement Contains a Mandatory Arbitration Clause.

The User Agreement that Plaintiff accepted begins by stating:

> This is a contract between you and Coinbase, Inc. ("Coinbase"). By signing up to use an account through coinbase.com or gdax.com, or any associated websites, APIs, or mobile applications (collectively the "Coinbase Site"), you agree that you have read, understood, and accept all of the terms and conditions contained in this Agreement, as well as our [Privacy Policy] (https://www.coinbase.com/legal/privacy) and E-Sign Consent.

*Id.*, ¶¶ 6, 8, Ex. 1.

User Agreement Section 7.2 provides for the mandatory arbitration of disputes before the AAA under its Consumer Arbitration Rules. Section 7.2, titled "Arbitration; Waiver of Class Action," provides, in relevant part:

> If you have a dispute with Coinbase, we will attempt to resolve any such disputes through our support team. **If we cannot resolve the dispute through our support team, you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis, in accordance with the American Arbitration Association's rules for arbitration of consumer-related disputes (accessible at https://www.adr.org/sites/default/Consumer%20Rules.PDF) and you and Coinbase hereby expressly waive trial by jury and right to participate in a class action lawsuit or class-wide arbitration**.
>
>                     \*      \*      \*      \*

*Id.*, ¶¶ 6, 9, Ex. 1.

Section 7.2 also provides that "[t]he arbitration will be conducted by a single, neutral arbitrator and shall take place in the county or parish in which you reside, or another mutually agreeable location, in the English language." *Id.*, ¶¶ 6, 10, Ex. 1. Coinbase provides reimbursement of filing fees and other AAA administrative costs in

6

excess of those that the user would pay if proceeding in court. *Id.* Section 7.2 therefore provides a fair, efficient, and local (to the user) procedure for the resolution of disputes between Coinbase and its users.

### III.   ARGUMENT

#### A.   Plaintiff's Claims Are Subject to Binding Arbitration Pursuant to the Arbitration Agreement.

##### 1.   Under the FAA, This Court Must Compel Arbitration Pursuant to the Terms of the Arbitration Agreement.

Section 2 of the FAA mandates that binding arbitration agreements in contracts "evidencing a transaction involving [interstate] commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). The FAA was enacted to "overcome judicial resistance to arbitration," *Buckeye Check Cashing, Inc.*, 546 U.S. at 443, and "establishes 'a liberal … policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24 (1983)); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005).

The FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22 (2011) (per curiam) (citations omitted); *see also AT&T Mobility LLC v. Concepcion*, 563

U.S. 333, 344 (confirming that the "'principal purpose' of the FAA is to 'ensure that private arbitration agreements are enforced according to their terms.'") (citations omitted); *accord Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010).

Under the FAA, arbitration must be compelled where, as in this case: (1) a valid, enforceable agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See* 9 U.S.C. § 4; *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008); *Gray v. Uber, Inc.*, 362 F. Supp. 3d 1242, 1245 (M.D. Fla. 2019). It is well settled that the party resisting arbitration bears the burden of showing that the arbitration agreement is invalid or does not encompass the claims at issue, a burden that cannot be met by Plaintiff on the facts here. *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 92 (2000). The binding Arbitration Agreement should be enforced.

### 2. The Arbitration Agreement Is Valid.

While the FAA exclusively governs the enforceability of the Arbitration Agreement according to its terms, state law governs the determination of whether a valid agreement to arbitrate exists. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) ("When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.") (citation omitted); *Lambert*, 544 F.3d at 1195. Although the parties' User Agreement contains a California choice-of-law clause, the Arbitration Agreement is valid under both Florida and California law. Ordinary state-law principles of contract formation in both Florida and California

8

require offer, acceptance, and consideration. *See Bannister v. Sally Beauty Supply, LLC* 2020 WL 8223534, at *2 (M.D. Fla. Dec. 15, 2020); *QC Labs v. Green Leaf Lab, LLC*, 2020 WL 6064966, at *2 (C.D. Cal. July 9, 2020). Establishing these requirements generally turns on whether the parties manifested "mutual assent." *See Lawhon v. Aaron's, Inc.*, 2020 WL 2219665, at *8 (M.D. Fla. May 7, 2020); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017).

Here, Plaintiff accepted the terms of the User Agreement, including its arbitration provision, when she clicked "I Agree" to the User Agreement while registering her Coinbase account. McPherson-Evans Decl., ¶ 14, Ex. 2.; *id.* ¶ 14, Ex. 1 (User Agreement Preamble) ("This is a contract between you and Coinbase, Inc."); *id.* (Section 7.2) ("…you and we agree that *any* dispute arising under this Agreement *shall* be finally settled in binding arbitration") (emphasis added). Plaintiff acknowledges the applicability and validity of the User Agreement by predicating her causes of action on Coinbase's alleged breach of the User Agreement's terms. *See* Compl., at 5, 7, ¶¶ 1-3, 15.

Courts routinely enforce "clickwrap"[3] web-based agreements and arbitration agreements contained therein, as with Coinbase's User Agreement, where users must affirmatively click "I Agree" to the User Agreement after being presented with terms and conditions. *See Nguyen*, 763 F.3d at 1176 ("Courts have also been more willing to find the requisite notice for constructive assent where the browsewrap agreement

---

[3] "Clickwrap" agreements are agreements "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use." *Nguyen*, 763 F.3d at 1176.

resembles a clickwrap agreement—that is, where the user is required to affirmatively acknowledge the agreement before proceeding with use of the website"); *Babcock*, 454 F. Supp. 3d at 1231 (applying California law and holding that "by tapping 'I Agree' the user confirms that he or she read and agreed to [the User Agreement].") (internal quotations omitted); *In re Facebook*, 185 F. Supp. 3d at 1165 ("[O]ur Circuit has recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable."); *Savetsky*, 2015 WL 604767, at *3 (holding that courts generally find "agreements enforceable" where the sign-up-flow "requires a user or prospective customer to check a box or click an 'I agree' button after being presented with terms and conditions"); *Segal*, 763 F. Supp. 2d at 1369 ("In Florida and the federal circuits clickwrap agreements are valid and enforceable contracts.").

Other courts have enforced the Coinbase User Agreement at issue here. *See Sultan*, 354 F. Supp. 3d at 158 (compelling arbitration where the plaintiff "allege[d] that Coinbase, Inc. . . . negligently failed to prevent a scam that allowed a third party to steal more than $200,000 from his account"); *Pierre*, 2021 WL 1538015, at *1 (compelling arbitration of claims where the plaintiff alleged Coinbase failed to put proper measures to protect its customers from security breaches, which caused the plaintiff to sustain a loss of funds); *Strozier*, No. 651451/2018 (Sup. Ct., N.Y. Cty. Sept. 5 and 10, 2018) (compelling arbitration of claims against Coinbase for negligence and violation of GBL § 349).

10

Accordingly, when Plaintiff viewed the User Agreement and clicked the "I Agree" button and became a Coinbase member, she both created an account and manifested her unambiguous assent to the User Agreement, including the Arbitration Agreement therein. That agreement is enforceable – as numerous courts have held – and should be enforced by this Court here.

### 3. Plaintiff's Claims Are Within the Scope of the Agreement.

Plaintiff's claims fall squarely within the scope of her arbitration agreement with Coinbase. The Supreme Court and Eleventh Circuit have distinguished between broadly-written arbitration clauses that designate all disputes to arbitration and those that purport to make only a narrow set of issues arbitrable, finding that the "presumption of arbitrability is 'particularly applicable' where an arbitration clause is broadly worded." *Int'l Bhd. of Elec. Workers Sys. Council U-4 v. Fla. Power & Light Co.*, 627 F. App'x 898, 901 (11th Cir. 2015) (citing *AT&T Techs., Inc.*, 475 U.S. at 650). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985). Where the clause is broad, as is the Arbitration Agreement here, there is a heightened presumption of arbitrability such that, "'in the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *AT&T Tech.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)).

The Arbitration Agreement before this Court is broad and encompasses Plaintiff's claims. *See Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209 (11th Cir. 2021); *Phillips v. NCL Corp. Ltd.*, 824 F. App'x 675, 677 (11th Cir. 2020); *Raw Life Organics LLC v. SBL, LLC*, 2021 WL 217765, at *6 (S.D. Fla. Jan. 6, 2021). The Arbitration Agreement in the User Agreement encompasses "*any* dispute arising under this Agreement *shall* be finally settled in binding arbitration." McPherson-Evans Decl., ¶¶ 6, 9, Ex. 1 (emphasis added). By this lawsuit, Plaintiff claims Coinbase "accessed [her] account without [her] permission," improperly "increased [her] withdrawal limit," "converted all [her] funds . . . without [her] permission," and "violated several clauses of its own User Agreement." Compl., at 5, 7, ¶¶ 1-3, 15.

It is well settled that if underlying claims simply "'touch matters' covered by parties'" arbitration agreements, then those claims must be arbitrated. *Wolfe v. Carnival Corp.*, 421 F. Supp. 3d 1355, 1358 (S.D. Fla. 2019) (citing *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1449 n.22 (11th Cir. 1998)). Here, Plaintiff renders the analysis simple and admits that her claims arise from multiple provisions within the User Agreement. Plaintiff admits that her claims arise under the User Agreement. Plaintiff attached the User Agreement as an Exhibit to her Complaint and highlighted the section from which she argues her claims arise. Compl., at 7, ¶¶ 15, Exh. H. Plaintiff filed a Supplement to her Complaint which reiterates that "Coinbase has violated several clauses of its own User Agreement" and identified twelve additional sections in the User Agreement from which she avers her claims arise. *See*

12

Supplement to Complaint [Dkt. 4]. Thus, because the Arbitration Agreement's broad language plainly covers Plaintiff's claims, all of which directly stem from the User Agreement, the Motion should be granted.

### B. This Action Should Be Stayed Pending Completion of the Arbitration.

Section 3 of the FAA expressly provides that, where a valid arbitration agreement requires a dispute to be submitted to binding arbitration, the district court shall stay the action "until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3; *see Bender v. A.G. Edwards & Sons, Inc.*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."). A stay of this action pending completion of the arbitration serves the dual purpose of judicial economy and efficiency. Once the arbitration is complete, the parties can return to this Court for post-arbitration procedures (*i.e.*, either to confirm, challenge and/or vacate the award) without having to commence a new, separate action. *See, e.g.*, *Armont v. K12 (Fla. Cyber Charter Acad. - FLCCA)*, 2020 WL 376957, at *1 (M.D. Fla. Jan. 23, 2020) (compelling arbitration and staying action).

### IV. CONCLUSION

For all of the foregoing reasons, the Court should grant Coinbase's motion to compel arbitration and stay the action pending the arbitration proceedings.

/s/ Amanda E. Reagan
Amanda E. Reagan
Florida Bar No. 92520
**DLA PIPER LLP (US)**

13

3111 W. Dr. Martin Luther King Jr. Blvd.<br>
Suite 300<br>
Tampa, FL 33607<br>
Telephone:  813-229-2111<br>
Fax:  813-229-1447<br>
Email: amy.reagan@dlapiper.com<br>
sheila.hall@dlapiper.com<br>
*Attorneys for Defendant*<br>
*Coinbase, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 12, 2021, a true and correct copy of the foregoing was furnished by United States mail to:

Rahila Tarverdiyeva
480 Archway Drive
Spring Hill, FL 34606
*Pro Se* Plaintiff

/s/ *Amanda E. Reagan*
Attorney

14